No. 80–1474. WINSTON, SHERIFF, ET AL. *v.* MOORE. C. A. 4th Cir. Motion of respondent for leave to proceed *in forma pauperis* granted. Certiorari denied.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and JUSTICE STEWART join, dissenting.

The respondent was charged with feloniously breaking and entering with intent to commit larceny, and was tried by the Circuit Court of the city of Richmond, Va., on March 10, 1980. At approximately 4:30 p.m., the presentation of evidence and arguments of counsel having been completed, the jury retired to deliberate. At approximately 6 p.m., the jury recessed for the evening. The next morning the trial court gave the jury its version of an "Allen" charge because it sensed that the jury was having difficulty reaching a verdict. The jury again began deliberating, but after a little less than an hour the foreman notified the trial court that the jury had not been able to reach a verdict. The court then excused the jury and declared a mistrial, all without objection from the respondent. At the same time, the court set the case down for retrial the following month, on April 16, 1980.

On April 15, 1980, the trial court denied respondent's motion to dismiss the indictment on the ground that a retrial would violate the Double Jeopardy Clause of the Fifth Amendment. Respondent sought the same relief from the Supreme Court of Virginia, which was summarily denied on April 16, 1980. App. to Pet. for Cert. 6a. Respondent then filed a federal habeas petition in the Eastern District of Virginia, likewise seeking to enjoin a retrial. Respondent contended that the trial court erred when it declared a mistrial at the March 10, 1980, trial because there was an insufficient showing of "manifest necessity," as required by this Court's ruling in *United States* v. *Perez,* 9 Wheat. 579 (1824). On April 17, 1980, the District Court held a hearing, apparently on the basis of sworn allegations and responses, see App. to

Pet. for Cert. 6a, and issued a writ of habeas corpus directing that respondent "shall be free from any further jeopardy on the charges set forth in the indictment against him set forth in the record in this case." *Id.*, at 8a. This determination was in turn affirmed on the basis of the "reasons adequately stated by the district court" by a divided Court of Appeals on December 18, 1980. 639 F. 2d 781 (CA4).

The reasoning of the District Court seems to have been that the jury had deliberated for a relatively short period of time: approximately 1½ hours on March 10th, and approximately an hour the following day. The state judge, however, had given the jury his version of an "Allen" charge before they commenced deliberations on the second day, and the District Court in its findings of fact and conclusions of law stated that "[t]here is, of course, no magic number of hours." App. to Pet. for Cert. 7a. The second critical flaw which the federal habeas court found in the state-court proceedings was that the foreman of the jury had not specifically informed the judge that the jury was deadlocked, but instead simply stated "the jurors have not been able to reach a verdict." Thereafter, the trial judge failed to inquire of the jury as a whole. *Ibid.* The federal habeas judge explained: "I think that such an inquiry by the court is required by the law, and in the absence of such an inquiry there is no record which would support a finding that a mistrial was manifestly necessary." *Id.*, at 8a.

Certainly the "law" upon which the federal habeas judge relied is not law which has emanated from this Court. We have recognized that the determination of "manifest necessity" is one which a trial court is uniquely capable of making, and said as much in *United States* v. *Perez, supra:*

> "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opin-

ion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . . But, after all, they [the courts] have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." *Id.,* at 580.

Over a century later, this Court noted in a somewhat different context:

"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Gori* v. *United States,* 367 U. S. 364, 368 (1961).

The classical case of "manifest necessity" in this Court, and so far as I know in other court systems, has been the case of the "hung jury." The federal habeas court gave a tip of its hat to the *Perez* case, went on to state that "this question of manifest necessity has been interpreted by the Third Circuit in *Rusoe* and in *Webb,*" App. to Pet. for Cert. 7a, and the remainder of its two-page opinion seems to consist of the federal judge's own opinion of what the law of double jeopardy should be.

I know of no case in this Court imposing on a trial judge a

requirement that each individual juror be interrogated as to the possibility of reaching a verdict before a mistrial is declared, nor do I know of a single case from this Court which has ever overturned a trial court's declaration of a mistrial after a jury was unable to reach a verdict on the ground that the "manifest necessity" standard had not been met. This Court reiterated in *Wade* v. *Hunter,* 336 U. S. 684, 692 (1949), what it had stated in *Perez,* that "the sound discretion of a presiding judge should be accepted as to the necessity of discontinuing a trial." And in our most recent foray into the area of "manifest necessity," *Arizona* v. *Washington,* 434 U. S. 497, 506 (1978), we stated that these words did not "describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge."

In sum, I am reluctantly led to the conclusion that the District Court did one of two things in order to grant the relief that it did, and that either of them merit review by this Court. Either it simply "second-guessed" the state trial judge as to whether this particular jury could, after further deliberation, reach a verdict, or it created a principle of law that has never been sanctioned by this Court to the effect that a trial judge must interrogate each juror as to the possibility of reaching a verdict before it may declare a mistrial because the jury has "hung." Either one of these actions, with their concomitant affirmance by the Court of Appeals, merits plenary review here.

In my view, the determination of "manifest necessity" is one uniquely vested in the discretion of a trial judge, and particularly should not be subject to attack by a habeas action after trial counsel had failed to object to the declaration of a mistrial. Accordingly, I dissent from the denial of the petition for a writ of certiorari to review the action of the Court of Appeals for the Fourth Circuit which summarily affirmed the action of the District Court in releasing respondent from custody and preventing a retrial.