Matthew S. BURTT, Builder
Constructionman, U. S.
Navy, Appellant,

v.

J.W. SCHICK, Master-at-Arms Master
Chief Officer-in-Charge, Naval Brig
Guantanamo Bay, Cuba, and Alvin S.
Transeau, Captain, JAGC U. S. Navy,
Military Judge, Appellees.

Misc. Dkt. No. 86–33/NA.
NMCM Misc. Dkt. No. 86–3472M.

U.S. Court of Military Appeals.

Dec. 22, 1986.

For Appellant: *Major James Carlsen,
USMC* (argued); *Lieutenant John P.
Sheridan, JAGC, USNR* (on brief).

For Appellees: *Lieutenant Commander
Lawrence W. Muschamp, JAGC, USN* (argued); *Commander Michael P. Green,
JAGC, USN* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant filed a writ-appeal petition
with this Court from the adverse decision
of the Court of Military Review denying his
request for extraordinary relief. Two issues
are presented:

I

WHETHER THE FIFTH AMEND-
MENT'S DOUBLE JEOPARDY
CLAUSE BARS FURTHER PROCEED-
INGS IN THIS MATTER SINCE THE
MILITARY JUDGE FAILED TO EXER-
CISE SOUND DISCRETION BY

GRANTING A MISTRIAL OVER DEFENSE OBJECTION IN VIOLATION OF PETITIONER'S CONFRONTATION RIGHTS.

II

WHETHER DOUBLE JEOPARDY BARS FURTHER PROCEEDINGS INVOLVING THE INDECENT ASSAULT CHARGE SINCE EVIDENCE WAS PRESENTED ON THAT CHARGE IN THE CONTEXT OF THE CONSPIRACY CHARGE.

We hold that the military judge in the first trial abused his discretion in declaring a mistrial over defense objection. Consequently, former jeopardy bars a second trial on all charges and specifications.[1]

The facts alleged in the petition, and confirmed by counsel during oral argument, reveal that on June 16, 1986, appellant was placed in pretrial confinement at the Naval Brig, Guantanamo Bay, Cuba, where he remained at the time of oral argument. Charges alleging violations of Articles 81 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 920, respectively, were referred to a general court-martial, with trial commencing on August 8, 1986, before a panel of officer and enlisted members.

The Government's fourth witness on the merits was appellant's alleged accomplice in the offenses. On cross-examination, the witness admitted that he was testifying under a grant of immunity and that he had already been convicted by court-martial. Defense counsel then asked, "And you received a year and a bad conduct discharge for what you did?." Before the question was answered, trial counsel objected.

Out of the presence of the members, the military judge chastised defense counsel for asking the question. Defense counsel asserted that his purpose was to show that the witness had a motive to lie, explaining:

> Look, sir, this man is testifying under a grant of immunity and he received a bad conduct discharge. You were at his trial [as the presiding military judge] when he testified—
>
> *    *    *    *    *    *
>
> ... how important it was for him to stay in the Navy. Now, sir, had he gotten substantial confinement, I never would have asked. But since he only got a year, there's a chance that he could get a suspension on his bad conduct discharge, and that makes—that gives him a motive to lie like nobody has a motive to lie! [2]

The military judge indicated that he saw no validity in the defense position and recessed the court to enable trial counsel to consult with the staff judge advocate about the advisability of requesting a mistrial. When court resumed, trial counsel moved for a mistrial, stating that the information as to the sentence of the accomplice would taint the panel's deliberations on a sentence for appellant. Over defense counsel's vehement objection, the military judge granted the motion for mistrial, stating, in part, the following:

> I find that a curative instruction as to this matter would be futile. I think that this is precisely the kind of information that, once in the minds of the members, is there to stay and would inevitably be kept in mind during any sentencing proceeding that might result from this— from this case.

On August 12, 1986, an Article 32, UCMJ, 10 U.S.C. § 832, hearing was conducted on the rape and conspiracy charges originally referred to trial, in addition to a charge of indecent assault under Article 134, UCMJ, 10 U.S.C. § 934. The facts

---

1. By order of October 31, 1986, this Court dismissed all pending charges and ordered appellant's release from pretrial confinement.

2. It appears that the witness received a more lenient sentence from the court-martial than that provided in his pretrial agreement, so the convening authority was not bound to disapprove or suspend any portion of the adjudged sentence.

constituting the indecent assault had been previously alleged as an overt act under the conspiracy charge. In due course, the convening authority referred all three charges to trial by general court-martial.

■ Without waiting for the military judge in the second court-martial to rule adversely on a former-jeopardy claim, appellant chose to immediately seek extraordinary relief. Ordinarily, this Court would not entertain an extraordinary writ petition unless the military judge first had been given an opportunity to rule on the double-jeopardy issue. Considering the unique circumstances of this case, however, including appellant's status in pretrial confinement and the waste of time and energy that can be avoided if we promptly resolve the issues before us, we conclude that the exercise of extraordinary writ jurisdiction at this stage of the proceedings is appropriate. *Shepardson v. Roberts*, 14 M.J. 354, 357 (C.M.A. 1983); *Chenoweth v. Van Arsdall*, 22 U.S.C.M.A. 183, 188, 46 C.M.R. 183, 188 (1973).

■ Under Article 44(a), UCMJ, 10 U.S.C. § 844(a), which applies the protections of the fifth amendment of the United States Constitution to servicemembers, an accused cannot be tried twice for the same offense. Among other protections, the double-jeopardy clause gives an accused a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). When trial is terminated over defense objection, as was done here, the Government has a heavy burden of showing "manifest necessity" for the mistrial in order to remove the double-jeopardy bar to a second trial. *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). *See* R.C.M. 915(a),

Manual for Courts-Martial, United States, 1984. Thus, the power to declare a mistrial, without the consent of the accused, must "be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). When courtroom errors occur which cast doubt on "the fairness of the" trial, "the trial judge must, before granting a mistrial, determine that an alternative measure, less drastic than mistrial, would not alleviate the problem so as to allow the trial to continue to an impartial verdict." *United States v. Ghent*, 21 M.J. 546, 550 (A.F.C.M.R. 1985). *See United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

■ Assuming, without deciding, that the military judge correctly determined that the question posed by defense counsel was improper, we are nonetheless compelled to conclude that the declaration of a mistrial was an abuse of discretion.[3] Clearly, there were less drastic measures which could have been employed here to cure or at least mitigate any prejudice. The question was never answered, so no inadmissible evidence was before the members. An instruction to disregard the improper question would likely have sufficed to rectify any problem. *See United States v. Watkins*, 21 M.J. 224 (C.M.A. 1986). Moreover, the military judge apparently did not perceive that the "taint" affected the findings, as he voiced concern only about unfairness of the sentencing proceedings. Thus, he could have declared a mistrial as to the proceedings after findings only. *See* R.C.M. 915(a). This alternative would have allowed the merits of the charges against the accused to be resolved by the panel of members already sitting, given the Government one, and only one, opportunity to

---

3. It is proper impeachment to inquire into possible bias or motive to fabricate on the part of a witness. *See* Mil.R.Evid. 608(c). Although eliciting the accomplice's adjudged sentence may have been unnecessary in this case, the defense must be permitted "to make a record from which to argue *why* ... [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974).

present its case, and lessened "the risk that an innocent defendant may be convicted." *See Arizona v. Washington, supra* 434 U.S. at 504, 98 S.Ct. at 829 (footnote omitted).

We accept the Government's concession, made in oral argument, that the assault charge added at the time of the second referral is affected by the double-jeopardy claim. Therefore, trial on all pending charges is barred by the prohibition against double-jeopardy in Article 44(a).

Accordingly, the writ-appeal petition is granted; the decision of the United States Navy-Marine Corps Court of Military Review is reversed; and all pending charges and specifications are dismissed.

Chief Judge EVERETT and Judge SULLIVAN concur.